UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | |
|---|---|
| ROBERT WIEDO,              )<br>                                               )<br>       Plaintiff,               )<br>                                               )<br>V.                                         )<br>                                               )<br>SECURIAN LIFE INSURANCE  )<br>COMPANY, *et al.*,             )<br>                                               )<br>       Defendants.         )  | Civil No. 3:19-cv-00097-GFVT<br><br><br>**MEMORANDUM OPINION**<br>**&**<br>**ORDER** |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on Plaintiff Robert Wiedo's Motion to Transfer Venue. [R. 23.] This action was initially filed in Anderson Circuit Court. [R. 1-1.] Defendants removed to this Court pursuant to the Employee Retirement Income Security Act of 1974 29 U.S.C. §§ 1132 ("ERISA"). [R. 1.] Now, Mr. Wiedo seeks transfer to the U.S. District Court in San Francisco, California, in accordance with a forum-selection clause included in the McKesson Corporation Health and Welfare Wrap Plan ("Wrap Plan"). [R. 23-2 at 19–20.] For the following reasons, Plaintiff's Motion to Transfer Venue is **GRANTED**.

**I**

Before her untimely death, Amanda Wiedo purchased accidental death and dismemberment (AD&D) coverage through her employer, Defendant McKesson Corporation.[1] [R. 16 at ¶ 21.] The AD&D benefits are part of an employee welfare benefit plan administered by McKesson under the McKesson Corporation Life and Accidental Death & Dismemberment

---

[1] Mr. Wiedo named both McKesson Corporation and the McKesson Corporation Life and Accidental Death & Dismemberment Insurance Plan as Defendants in this action. For purposes of clarity, McKesson Corporation and the McKesson Plan will be referred to jointly as McKesson for the remainder of this Order, unless otherwise specified.

1

Insurance Plan.  [*Id*. at 2; R. 31 at 1.]  The benefits are insured by Defendant Securian Life Insurance Company under the Group Term Life Insurance Policy No. 70055 (the "Policy") that Securian issued to McKesson Corp.  [R. 30 at 1.]  Robert Wiedo, Ms. Wiedo's husband at the time of her death, is the beneficiary of these benefits.  [R. 23-1 at 2.]

Shortly after his wife's death, Mr. Wiedo made a claim to Securian for payment of the AD&D benefits.  [R. 16 at ¶ 30.]  Securian denied payment.  [*See* R. 23-1 at 2.]  In its initial denial letter, Securian included a notice of ERISA appeal rights.  [R. 30 at 2; R. 30-3 at 4.]  Mr. Wiedo appealed the denial in June of 2019 and, in August, Securian responded by sending another letter requesting additional time and informing Mr. Wiedo that the McKesson Plan was governed by ERISA.  [R. 30 at 3; R. 30-6.]  Mr. Wiedo's appeal was ultimately denied via a letter sent September 9, 2019.  [R. 23-1 at 2–3.]  That letter informed Mr. Wiedo that he had a right to bring a lawsuit under ERISA if his claim was governed by the Act.  *Id*. at 3.

After receiving the letter, Mr. Wiedo requested that McKesson provide him with copies of all applicable McKesson Plan documents.  McKesson failed to provide the documents as quickly as Mr. Wiedo preferred, at which point he filed suit against Securian and McKesson in Anderson Circuit Court on November 15, 2019.  [R. 23-1 at 3.]  Defendants removed to this Court on December 20, 2019.  [R. 1.]

Following removal, McKesson provided Mr. Wiedo with the Wrap Plan which contains the forum-selection clause at issue.  [*See* R. 23-2; R. 23-3.]  The forum-selection clause states that "[a]ny legal action (whether in law, in equity, or otherwise) must be brought in the U.S. District Court in San Francisco, California, where the plan is administered, unless stated otherwise in the Benefit Program Materials."  [R. 23-2 at 19–20.]  In the body of the e-mail providing the Wrap Plan, McKesson informed Mr. Wiedo that the Plan contained a "Governing

Law and Forum Selection Clause selecting the U.S. District Court in San Francisco, California." [R. 23-3.] McKesson advised that, if Mr. Wiedo maintained his action against McKesson, they "may seek to enforce the forum selection clause and transfer the action." *Id*. After receiving a copy of the Wrap Plan, Mr. Wiedo filed his First Amended Complaint under ERISA, identifying the Northern District of California at San Francisco as the appropriate venue. [R. 16 at ¶ 30.] But rather than seek transfer, McKesson and Securian filed motions under Rule 12. [R. 21; R. 22.] Mr. Wiedo now moves the Court to transfer venue to the Northern District of California at San Francisco.

At this stage, the parties now agree that this action is governed by ERISA. [R. 16 at ¶ 6; R. 31 at 2.] The sole issues to be resolved are whether there is a valid forum-selection clause that is enforceable against Securian and McKesson, and, if so, if there is any circumstance that renders transfer unwarranted.

## II

A motion to transfer venue is governed by 28 U.S.C. § 1404(a), which provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The purpose of § 1404(a) is "to prevent the waste of time, energy, and money, and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (internal citations and quotations omitted). For this reason, transfer must be to a "more convenient forum," and not merely one that is equally convenient. *Id.* at 645–46. In reviewing motions made pursuant to § 1404(a), courts consider a number of factors, including:

> (1) convenience of the parties and the witnesses, (2) accessibility of sources of proof, (3) the costs of securing testimony from witnesses, (4) practical problems

>associated with trying the case in the least expensive and most expeditious fashion, and (5) the interests of justice. Other factors include (1) the relative congestion in the courts of the two forums, (2) the public's interest in having local controversies adjudicated locally, (3) the relative familiarity of the two courts with the applicable law, (4) the plaintiff's original choice of forum, and (5) whether the parties agreed to a forum selection clause.

*Kentucky Speedway, LLC v. National Ass'n of Stock Car Auto Racing, Inc.*, 406 F. Supp. 2d 751, 755 (E.D. Ky. 2005). Thus, § 1404(a) "place[s] discretion in the district court to adjudicate motions for transfer according to an individualized case-by-case consideration of convenience and fairness." *Id.* at 754. Generally, the party moving for transfer bears the burden of establishing that venue should be transferred by showing that the relevant factors "weigh strongly in favor of transfer." *Winnett v. Caterpillar Inc.*, No. 3:06-CV-00235, 2006 WL 1722434, at *1 (M.D. Tenn. June 20, 2006).

However, the Supreme Court has held that when a motion to transfer is premised on a valid, enforceable forum-selection clause, the calculus changes. *See Atlantic Marine Const. Co., Inc. v. U.S. District Ct. for the W.D. Texas*, 571 U.S. 49 (2013). In *Atlantic Marine*, the Supreme Court found that "[t]he presence of a valid forum-selection clause requires district courts to adjust their usual § 1404(a) analysis in three ways," two of which are relevant here. *Id.* at 63. First, the plaintiffs' initial choice of forum carries no weight—instead, the nonmovant "bears the burden of establishing that transfer to the forum for which the parties bargained for is unwarranted." *Id.* And second, "a court evaluating a . . . §1404(a) motion to transfer based on a forum-selection clause should not consider arguments about the parties' private interests." *Id.* at 64. While a district court may still consider public interest factors, "those factors will rarely defeat a transfer motion [and] the practical result is that forum-selection clauses should control except in unusual cases." *Id.*

4

Notably, the Sixth Circuit has upheld forum-selection clauses in similar ERISA plans, as long as the venue specified in the clause is either in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found. *Smith v. Aegon Companies Pension Plan*, 769 F.3d 922, 931 (6th Cir. 2014); *see also Kelly v. Liberty Life Assurance Co. of Bos.*, No. CV 17-139-DLB, 2018 WL 558643, at *2 (E.D. Ky. Jan. 25, 2018). The present forum-selection clause identifies the Northern District of California at San Francisco, which is where the McKesson Plan is administered. [*See* R. 23-1 at 6.] So, if the forum-selection clause is enforceable against Securian and McKesson, it will control unless the Defendants can show that transfer is unwarranted. The first issue to be resolved is whether Mr. Wiedo can enforce the clause against McKesson after initially bringing his action in state court and where McKesson claims to have unilaterally waived the clause's enforcement.

### A

"When parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation." *Atlantic Marine*, 571 U.S. at 64. In these circumstances, the forum-selection clause "should control absent a strong showing that [it] should be set aside." *Wong v. PartyGaming,* 589 F.3d 821, 826 (6th Cir. 2009). There is a heavy burden on the opposing party to show that the clause should not be enforced. *Id*. Forum-selection clauses are generally upheld where the opposing party fails "to offer any evidence showing that it did not knowingly and willingly consent to the inclusion of the clause in the Agreement." *Preferred Capital, Inc. v. Assocs. of Urology,* 453 F.3d 718, 722 (6th Cir. 2006).

1

Shortly after Mr. Wiedo filed this motion to transfer venue, McKesson attempted to unilaterally waive the forum-selection clause through a letter sent to Mr. Wiedo's counsel. [R. 23-2.] McKesson argues that this prevents Mr. Wiedo from enforcing the clause. [R. 31 at 2.] Additionally, McKesson argues that, through letters Securian sent, Mr. Wiedo should have realized that his claims were governed by ERISA and that consequently he should have known that he could bring his claims in the Northern District of California. *Id*. at 1. Mr. Wiedo asserts that he actively sought information regarding his claims, but was not provided with proper notice that his particular claims were governed by ERISA and that there was a forum-selection clause. [R. 32 at 7.] Regardless, it is undisputed that he was only provided with notice of the forum-selection clause after he filed his complaint and after McKesson removed to this Court. *Id*. at 1.

McKesson's argument is unavailing. Courts provide plaintiffs with flexibility to amend their choice of venue when the situation warrants a change. In fact, it is well settled that a plaintiff may move to transfer of venue if "he later discovers that there are good reasons for transfer." *Smith v. ABN AMRO Mortgage Group, Inc.*, 434 F. App'x. 454, 465 (6th Cir. 2011). In this case, McKesson formed a contract with Amanda Wiedo that included a valid forum-selection clause that McKesson themselves brought to Mr. Wiedo's attention after the suit was filed. [R. 23-3.] And, as noted, he was not provided with information regarding the forum-selection clause until after the case was removed to federal court. [R. 32 at 1.] McKesson cannot now prevent the enforcement of this clause by sending a letter "waiving" its enforcement shortly after Mr. Wiedo moved to transfer the action in line with the clause. Although a party may unilaterally waive a provision in certain circumstances, a party cannot waive a contractual

requirement that benefits both sides to the transaction. ² *See Citadel Equity Fund Ltd. v. Aquila, Inc.*, 371 F. Supp. 2d 510, 520 (S.D.N.Y. 2005), *aff'd*, 168 F. App'x 474 (2d Cir. 2006); see also 13 Williston on Contracts § 39:24 (Unilateral Waiver) (Richard A. Lord, ed., 4th Ed.) ("[A] waiver of contract requirements and conditions may not be made unilaterally when it would deprive the nonwaiving party of a benefit under the provision in question").

In sum, it is well within Mr. Wiedo's rights to seek enforcement of a contractual provision after he was made aware of its existence.  And McKesson offers no arguments that it did not knowingly and willingly consent to this clause or any other persuasive justification as to why it should not be enforced.  The forum-selection clause is enforceable against McKesson.

**B**

Now that it is established that McKesson may be bound by the forum-selection clause, the Court turns to whether Securian can be similarly bound.  To resolve this issue, the Court must consider both the relevant documents and the nature of the benefits available to McKesson employees, as provided by McKesson and Securian.

**1**

"General rules of contract interpretation incorporated as part of the federal common law of contract interpretation guide . . . in construing an ERISA plan." *Hunter v. Caliber System, Inc.*, 220 F.3d 702, 712 (6th Cir. 2000).  Under well-established federal common law, the first step in interpretation of an ERISA plan is to ascertain the parties' intent by examining the plan documents. *Musto v. American Gen. Corp.*, 861 F.2d 897, 900-01 (6th Cir. 1988), *cert. denied*, 490 U.S. 1020 (1989); *see also Citizens Ins. Co. of Am. V. MidMichigan Health ConnectCare*

---

² McKesson offers no argument that this clause was included solely for its benefit and nothing in the record definitively warrants such an interpretation.  Since Mr. Wiedo seeks to enforce this clause, the Court infers that it provides him with a benefit and therefore cannot be unilaterally waived by McKesson.

*Network Plan*, 449 F.3d 688, 692-693 (6th Cir. 2006) ("[T]he Court's paramount responsibility in construing plan language is to ascertain and effectuate the underlying intent.") (citations omitted). This means that the Court "must interpret the . . . Plan provisions according to their plain meaning, in an ordinary and popular sense." *Hunter*, 220 F.3d at 712 (internal citations and quotation marks omitted). The plain meaning approach requires the Court to "give effect to the unambiguous terms of an ERISA plan." *Lake v. Metropolitan Life Ins. Co.*, 73 F.3d 1372, 1379 (6th Cir. 1996).

When resolving any apparent plan ambiguities, "ERISA plans, like contracts, are to be construed as a whole." *Mitzel v. Anthem Life Ins. Co.*, 351 Fed. Appx. 74, 90 (6th Cir. 2009) (citations omitted); *see also Alexander v. Primerica Holdings, Inc.*, 967 F.2d 90, 95 (3d Cir. 1992) ("In interpreting an ambiguous ERISA plan, a court may consider the intent of the plan's sponsor, the reasonable understanding of the beneficiaries, and past practice, among other things."). Additionally, where "a court determines that a contract provision is ambiguous, then it 'may use traditional methods of contract interpretation to resolve the ambiguity, including drawing inferences and presumptions and introducing extrinsic evidence.'" *Schachner v. Blue Cross & Blue Shield of Ohio*, 77 F.3d 889, 893 (6th Cir. 1996) (quoting *Boyer v. Douglas Components Corp.*, 986 F.2d 999, 1005 (6th Cir. 1993)). The language of a plan provision is ambiguous "if it is subject to two reasonable interpretations." *Boyer*, 986 F.2d at 1003.

**2**

As noted, the present issue is whether Securian can be bound by the forum selection clause within the Wrap Plan. On this issue, the plain meaning of the plan documents is difficult to decipher. True, the language of the forum selection is clear: "[a]ny legal action (whether in law, in equity, or otherwise) must be brought in the U.S. District Court in San Francisco,

California, where the plan is administered, unless stated otherwise in the Benefit Program Materials." [R. 23-2 at 19–20.] But the question is whether Securian can be bound by that clause.

Securian argues it cannot be bound by the clause because it was not a party to the Wrap Plan. [R. 30 at 2.] Securian points out that it "issued a *separate contract*, the Policy, to McKesson Corp. to provide life insurance benefits to eligible employees of McKesson." *Id*. at 5. On the other hand, Mr. Wiedo contends Securian is bound by the clause because they "knew or should have known about [the clause] when it began insuring the benefits." [R. 32 at 8.] Separately, Mr. Wiedo argues that Securian ought to be bound by the forum-selection clause since the insurance contract was incorporated into the Wrap Plan. *Id*.

a

The first question is whether, as Mr. Wiedo argues, Securian is bound by the clause because it "knew or should have known" of the clause's applicability. Here, Mr. Wiedo argues that language within the Wrap Plan indicates that the Benefit Program Material includes the Policy, giving Securian an opportunity to state otherwise if they did not wish to be bound by the clause. [R. 32 at 8 (citing R. 23-2 at 4).] However, the language within the contract is anything but clear on this issue.

The section in question is Section 1.1, Definition of Plan. It states: "The official Plan document includes this Wrap Plan document as well as all applicable Benefit Program Material, such as the most current plan documents, insurance contracts . . . which are incorporated herein by this reference." [R. 23-2 at 4.] A plain reading of the provision indicates that insurance contracts, Securian's included, are part of the Benefit Program Materials and incorporated into the Wrap Plan. However, the definition of Benefit Program Material in the Wrap Plan does not

9

explicitly state that it includes insurance contracts. *See id*. at 5. Likewise, the Governing Provisions section suggests that insurance contracts are separate from Benefit Program Material. *Id*. at 20 (explaining that, if there are any inconsistences between the Wrap Plan and Benefit Program Materials, the Wrap Plan shall govern, but if there are inconsistencies between the Wrap Plan and insurance contracts, the insurance contracts shall govern). Finally, the insurance contract expressly states that it contains "the entire insurance contract between you [McKesson] and us [Securian]." [R. 30-1 at 62.]

The various inconsistencies within these documents create confusion as to whether the insurance contracts are part of the Benefit Program Materials and if they are incorporated into the Wrap Plan. As such, any attempt to ascertain the intent of the parties based on the documents alone is, in large part, futile—there are no inferences that can be drawn which lead to an unambiguous interpretation on this issue. *Mitzel* 351 F. App'x. at 90. Further, the parties have not introduced any extrinsic evidence that clarifies the parties' intent. The provisions are simply incompatible. And the ambiguity does not end there.

b

Even assuming the insurance contract is part of the Benefit Program Material and is incorporated into the Wrap Plan, the issue is not clearly resolved. True, there is authority showing that if a forum-selection clause is in a document that is incorporated into a Wrap Plan, the forum-selection clause can bind the parties to the Wrap Plan. *See Kelly*, 2018 WL 558643 at *2; *see also Mattingly v. Humana Health Plan, Inc.*, No. 1:15-CV-781, 2018 WL 5620653, at *1 (S.D. Ohio Aug. 21, 2018). But this is a different circumstance—here, the forum selection clause is in the initial document. And Mr. Wiedo cites no authority that suggests a Wrap Plan that incorporates an insurance contract subsequently binds the insurer by the Wrap Plan's terms.

Application of general rules of contract interpretation do not resolve the issue given the incompatible, even conflicting, provisions within the relevant documents.  Based on the language of these provisions alone, the intent of the parties concerning whether Securian was to be bound by the forum-selection clause is unclear.  Consequently, the Court must look to other areas of the law to resolve this issue.

### 3

#### a

In certain instances, a forum-selection clause may bind a non-party to the contract if it is equitable to do so.  *Fifth Third Bank v. CW-Gallo, Inc.*, No. 1:10-CV-278, 2011 WL 13305369, at *2 (S.D. Ohio Jan. 31, 2011).  Courts have invoked this rule to restrict third-party beneficiaries and other closely related parties to the designated forum.  *See Farina v. Sirpilla RV Centers*, No. 5:18-CV-2734, 2019 WL 2436987, at *5 (N.D. Ohio June 11, 2019); *TAAG Linhas Aereas de Angola v. Transamerica Airlines, Inc.*, 915 F.2d 1351, 1354 (9th Cir. 1990).

That said, there is limited case law on this nuanced issue, and how courts determine whether it is equitable to bind a non-party is somewhat unclear.  On review, the Court finds that the approach taken in the Ninth Circuit, and recently cited by the Sixth Circuit, is instructive.  In *Manetti-Farrow v. Gucci Am., Inc.*, the Ninth Circuit explained that "a range of transaction participants, parties and non-parties should benefit from and be subject to forum selection clauses" where "the alleged conduct of the non-parties is so closely related to the contractual relationship that the forum selection clause applies to all defendants."  858 F.2d 509, 514 n.5 (9th Cir. 1988)); *see also Wilson v. 5 Choices, LLC*, 776 F. App'x 320, 329 (6th Cir. 2019).

Courts in this circuit have expanded on these principles, finding that "a non-signatory to a forum selection clause may be bound if the non-signatory is 'closely related' to the contracting

parties or dispute, such that it was 'foreseeable' that it will be bound[.]" *Veteran Payment Sys., LLC v. Gossage*, No. 5:14-CV-981, 2015 WL 545764, at *7 (N.D. Ohio Feb. 10, 2015) (citing *Baker v. LeBoeuf, Lamb, Leiby & Macrae,* 105 F.3d 1102, 1106 (6th Cir. 1997)).  To determine foreseeability, courts employ a "common sense, totality of the circumstances approach" that inquires into whether "in light of those circumstances, it is fair and reasonable to bind a non-party to the forum selection clause." *Regions Bank v. Wyndham Hotel Mgmt., Inc.*, No. 3:09-1054, 2010 WL 908753, at *6 (M.D. Tenn. Mar. 12, 2010); *see also Farina*, 2019 WL 2436987 at *5; *Veteran Payment Sys*., 2015 WL 545764, at *8.  "[T]his approach places emphasis on whether it should have been reasonably foreseeable to the non-signatory that situations might arise in which the non-signatory would become involved in the relevant contract dispute." *Regions Bank*, 2010 WL 908753 at *6.

So here, the question is whether, based on the business relationship between McKesson and Securian, it is reasonable to conclude that Securian is sufficiently "closely related" to the parties to the Wrap Plan such that it was foreseeable that it would be bound by the forum selection-clause.  On this standard, the Court concludes that Securian is closely related to McKesson and Mr. Wiedo as it relates to the present dispute and, therefore, is bound by the clause.

b

For purposes of the "closely related" inquiry, consideration of the ordinary way in which companies provide benefits to employees offers clarity.  ERISA plans are often the combination of several documents and therefore "in many cases a series of documents together comprise the plan." *Huffman v. Prudential Ins. Co. of Am.*, No. 2:10-CV-05135, 2017 WL 6055225, at *6 (E.D. Pa. Dec. 7, 2017).  In consideration of this reality, in ERISA cases, courts

have explained that a wrap plan " 'wraps' together separate ERISA benefits into a single 'wrap plan' document." *Mattingly v. Humana Health Plan, Inc.*, No. 1:15-CV-781, 2018 WL 5620653, at *1 (S.D. Ohio Aug. 21, 2018), *report and recommendation adopted*, No. 1:15-CV-781, 2018 WL 5619947 (S.D. Ohio Aug. 22, 2018).

As noted above, consideration of the language in the documents alone makes it difficult to interpret whether the documents comprise "a single wrap plan document." *See supra* Section II.B.2. In contrast, the integrated approach employed by Defendants paints a clear picture. Plainly, the Wrap Plan, insurance contracts, and other relevant documents all operate together. McKesson provides its employees insurance and Securian, as the insurance provider, is the entity that pays the benefits when proper. [R. 30-1 at 12 ("We will pay the death benefit to the beneficiary or beneficiaries.").]

These realities make clear that, in conducting its business, Securian is closely related to both Mr. Wiedo and McKesson as it relates to this dispute. Indeed, Mr. Wiedo first sought payment from Securian for the AD&D benefits. [R. 16 at ¶ 30.] And, based on the nature of Securian's business relationship with McKesson, it is highly foreseeable that disputes may arise in which both are involved. In fact, it is common for insurance companies to be caught in disputes regarding employer-provided insurance benefits under ERISA-governed wrap plans. *See, e.g.*, *Owens v. Liberty Life Assurance Co. of Bos.*, No. 4:15CV-00071-JHM, 2016 WL 4746212 (W.D. Ky. Sept. 12, 2016); *Johnson v. Prudential Ins. Co. of Am.*, No. 2:11-CV-664, 2012 WL 5378313 (S.D. Ohio Oct. 31, 2012); *Shaw v. Prudential Ins. Co. of Am.*, 566 F. App'x 536 (8th Cir. 2014). For these reasons, it is fair and equitable to bind Securian to the forum-selection clause contained in the Wrap Plan.

C

Finally, *Atlantic Marine* allows the district court to consider whether public interest factors weigh in favor of denying transfer. *Atlantic Marine*, 571 U.S at 64.  That said, as noted, "forum-selection clauses should control except in unusual cases." *Id*.  As an initial matter, the Court notes that certain policy considerations weigh in favor of keeping this action intact.  The Supreme Court has noted a clear policy to avoid piecemeal litigation.[3]  *See Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 819 (1976).  And courts often choose to construe forum-selection clauses in a manner that avoids piecemeal litigation and conserves judicial resources.  *See*, *e.g.*, *Miller v. Facebook, Inc.*, No. 1:09-CV-2810-RLV, 2010 WL 9525523, at *4 (N.D. Ga. Jan. 15, 2010); *Lewis v. Jayco, Inc.*, No. 3:18CV00100, 2019 WL 3797357, at *4 (W.D. Va. Aug. 12, 2019).  Breaking up this action would result in unnecessary judicial waste and therefore public policy weighs in favor of keeping McKesson and Securian in the same action.

On the other hand, both policy arguments advanced by McKesson and Securian fall short of convincing the Court that this is an unusual case that does not warrant transfer.  First, Defendants argue that because courts in the Northern District of California are more congested with civil actions, this action should not be transferred.  [R. 30 at 8; R. 31 at 7.]  But, when considering the timeframes for both civil and criminal disposition, the two districts have a virtually identical average disposition of civil and criminal cases.  [R. 32 at 4 (citing https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile1231.2019.pdf).]  In fact, as Mr. Wiedo points out, the median time from filing to disposition in the Northern District

---

[3] Piecemeal litigation occurs when different courts adjudicate the same issues, thereby supplicating judicial effort and possibly rendering an inconsistent result. *Romine v. Compuserve Corp.,* 160 F.3d 337, 341 (6th Cir. 1998).

14

of California in civil cases was actually slightly shorter than in the Eastern District of Kentucky. Next, Defendants argue that because the response to COVID-19 in San Francisco, California is more restrictive compared to the response in Frankfort, Kentucky, this action should not be transferred. [R. 30 at 7-8; R. 31 at 6-7.] But Defendants offer no evidence on how COVID-19 is affecting the Northern District of California disproportionately as compared to the Eastern District of Kentucky. The present pandemic is ubiquitous and undoubtably placing a strain on courts across the country. However, Defendants offer only speculation that the court systems in the two venues are affected disproportionately. These public policy arguments do not alter the above conclusion.

### III

The Supreme Court has made clear that valid "forum-selection clauses should control except in unusual cases." *Atlantic Marine*, 571 U.S. at 64. In the present case, there is a valid forum-selection clause that is enforceable against both parties. And Securian and McKesson have failed to meet their burden in demonstrating why there is an unusual or expectational circumstance that would warrant not enforcing the clause. *See Aegon*, 769 F.3d at 929. Accordingly, it is hereby **ORDERED** that Plaintiff's Motion to Transfer Venue **[R. 23]** is **GRANTED** and this action is transferred to the United States District Court for the Northern District of California at San Francisco for all further proceedings.

This the 1st day of September, 2020.

Gregory F. Van Tatenhove
United States District Judge